UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| JAMES RANDELL, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| vs. | ) | No. 4:12CV01020 AGF |
| JEFF NORMAN, | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the amended petition of Missouri state prisoner James Randall for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A jury convicted Petitioner of stealing over $500, in violation of Missouri Revised Statutes § 570.030. He was sentenced as a prior and persistent offender to 13 years' imprisonment. The crime involved a power washer that Petitioner stole from a Home Depot store. For habeas relief he asserts that his constitutional rights were violated by the trial court's refusal to instruct the jury on the lesser included offense of attempted stealing, and by the ineffective assistance of defense counsel in cross-examining the state's key witness, a loss prevention investigator for the store, concerning Petitioner's location when the investigator stopped him with the washer in his possession. For the reasons set forth below, habeas relief shall be denied.

# BACKGROUND

## Trial

The only witness at trial was the state's witness, James Putnam, the loss prevention investigator. Putnam testified that at about 3:15 p.m. on the day in question, he saw Plaintiff place a power washer valued at $699 on a flat-roll cart in the store and push the cart into the outside fenced garden area. Putnam identified the power washer as a high-theft item. Putnam observed Petitioner get down on his hands and knees and peer at the cashier through some plants that were on display shelves. When the cashier got busy, Petitioner pushed the cart quickly and attempted to exit the store. (Resp. Ex. A. at 124, 127). Photographs of Petitioner attempting to exit the store were presented. The photographs showed Petitioner walking past the cash register, with the cash register behind him. *Id.* at 126-127. Putnam noticed a truck standing at the end of the walkway about ten feet away with a person in it and the engine running. He stepped out in front of Petitioner and told him he had not paid for the washer. Petitioner flashed a receipt that turned out to be two weeks old for a small amount of groceries. The truck suddenly accelerated and Putnam saw it drive away quickly.

Putnam testified on direct examination that when Petitioner was pulling the power washer on the bed, he had "walked past all of the points of sale." There were "yellow markers," apparently at the exit of the store, past all points of sale. He first testified that Petitioner was "past the yellow markers." And when asked if Petitioner's body was past the yellow markers, he testified that he stepped in front of Petitioner and stopped him when Petitioner was "coming right at the yellow markers right on the yellow markers "

(Resp. Ex. A at 129.) On cross-examination, Putnam again stated "when [Petitioner's] body got to the yellow pillars" Putman came around in front of him. *Id.* at 140. Putnam then took Petitioner to the loss prevention office and the police were contacted.

Petitioner requested that the jury be instructed on the lesser included offense of attempted stealing, but the trial court refused the proffered instruction. During deliberations, the jury sent out a note which asked, "Did [Petitioner] walk past the two yellow posts?" The court told them to be guided by the evidence and the testimony as they recalled it. (Resp. Ex. D at 24-25.)

## Direct Appeal

The only point Petitioner raised on direct appeal was that the trial court erred in refusing his proffered instruction on the lesser included offense of attempted stealing. He argued that the jury's note asking if Petitioner "passed the two yellow posts" made it clear that the jury was considering whether Petitioner tried to steal the power washer but did not complete the offense "since he did not make it off the premises." (Resp. Ex. E.) The Missouri Court of Appeals held that the evidence that Petitioner passed the registers and headed toward the exit before he was stopped was enough to show the completion of the act of stealing, and therefore there was no need to instruct on attempted stealing.

## State Postconviction Proceedings

Petitioner raised several grounds for state postconvition relief, including his federal habeas claim that defense counsel was ineffective for failing to cross-examine Putnam to demonstrate that Petitioner did not go past the yellow markers before he was stopped by Putnam, thereby showing that Petitioner did not have the intent to steal the

power washer. This was the only claim raised on appeal from the denial of postconviction relief. (Resp. Ex. H.) Thus, review of Petitioner's other claims raised in his amended motion for postconviction relief is barred because they were not raised on appeal from the denial of postconviction relief, and ineffective assistance of postconviction appellate counsel has not been recognized as cause to excuse such a default. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012); *Hardins v. Wallace*, No. 4:13-CV-820 CEJ, 2014 WL 5343327, at *2 (E.D. Mo. Oct. 20, 2014).

At an evidentiary hearing held on April 16, 2010, on the motion for postconviction relief, defense counsel (who had approximately 20 years of criminal trial experience) first testified, with regard to the preserved claim, that he did not remember the evidence concerning "a yellow line," which "could have been" a significant issue for the jury, but that he did not think the state was claiming that Petitioner "was outside the store." A recess was taken during which defense counsel reviewed the trial transcript. He then acknowledged the note the jury sent asking about "the yellow post" and that his cross-examination of Putnam did not highlight to the jury whether when Petitioner was stopped, he was inside or outside the yellow markers. Defense counsel added, "[i]n my reading of his testimony, I still can't figure out exactly where [Petitioner] was." (Resp. Ex. K. at 6-13.) And, upon questioning by Petitioner's postconviction counsel, defense counsel testified that he thought that when Petitioner was stopped "he was past the register, but inside the gate or close to the gate," but that based on a review of the evidence no one could – or would have been able at trial to – really "pinpoint exactly where [Petitioner] was at that point." *Id*. at 19.

4

Specifically, with respect to his cross-examination of Putnam on this issue, defense counsel testified as follows: "I think that by the time [Putnam] had gotten off the stand, that it was unclear where exactly [Petitioner] was. And I don't think that there was – There was certainly nothing more that could be done from [Putnam] that put [Petitioner] further into the store." *Id.* at 19-23. Defense counsel noted that the sole legal issue in the case was whether Petitioner had the intent to steal. He stated that whether Petitioner had the intent to steal was "solely the issue. You can be inside the cash registers, and if you have an intent to steal, you're guilty." *Id.* at 23. On June 4, 2010, Petitioner testified by telephone deposition that he believed the outcome of the trial would have been different had defense counsel highlighted, in cross-examination of Putnam and in argument to the jury, that Petitioner had not walked past the yellow posts before he was stopped. (Resp. Ex. G., Doc. No. 23-1, at 39.)

The motion court noted that Petitioner had to overcome the presumption that applied that defense counsel's decision not to impeach was a matter of trial strategy. The court characterized defense counsel's testimony as follows: "[Defense counsel] believed that the issue of the yellow markers was not determining factor [sic] for the jury's deliberation of [Petitioner's] guilt. [Defense counsel] testified that the primary issue for the jury was whether or not [Petitioner] had the intent to steal." *Id.* at 77. The motion court found that the decision not to focus the jury's attention on the yellow markers was a matter of trial strategy, that defense counsel's cross-examination of the security officer was not ineffective, and further, that Petitioner was not thereby prejudiced. *Id.* at 77-78.

5

In affirming the motion court's ruling on this claim, the Missouri Court of Appeals quoted Putnam's testimony on direct examination about Petitioner being "at the yellow markers," and that it was thereby established that Petitioner had not completely exited the store, but had passed all points of sale, when he was stopped. The appellate court held that "[i]t stands to reason that if trial counsel had cross-examined [Putnam] about [Petitioner's] location in the store, Putnam would have given the same information. Therefore, the motion court correctly found that [Petitioner] was not prejudiced by trial counsel's failure to properly cross-examine [Putnam]." (Resp. Ex. J at 4.)

## **DISCUSSION**

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that federal habeas corpus relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737

F.3d 506, 510 (8th Cir. 2013). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

**Trial Court's Rejection of a Lesser-Included-Offense Instruction**

As noted above, Petitioner argues that his constitutional rights were violated by the trial court refusing his proffered instruction on the lesser included offense of attempted stealing. The Eighth Circuit "has consistently held that the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question." *Dickerson v. Dormire*, 2 F. App'x 695, 695 (8th Cir. 2001).

> In order to grant federal habeas relief, [a court] would have to say that the state courts' action . . . was contrary to, or an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). The Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases."

*Id*. Thus this claim fails. *See Joseph v. Russell*, No. 4:11CV00326 SNLJ, 2014 WL 1303645, at *4 (E.D. Mo. Mar. 31, 2014); *Perry v. Steele*, No. 4:07CV440 RWS, 2010 WL 427756, at *4 (E.D. Mo. Feb.1, 2010) ("In noncapital cases there currently is no constitutional requirement for lesser included offense instructions.") (citing *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir. 2007)).

**Assistance of Defense Counsel**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient, and that the deficient performance

7

prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The first prong requires a showing 'that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.' The second prong requires a showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *White v. Dingle*, 757 F.3d 750, 752-53 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687, 694).

For the first requirement of the *Strickland* test, "the court must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance, while at the same time refraining from engaging in hindsight . . . ." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Tunstall v. Hopkins*, 306 F.3d 601, 606 (8th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Strickland*, 466 U.S. at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "Taking AEDPA and *Strickland* together establishes a 'doubly deferential' standard of review in § 2254 cases" of claims of ineffective assistance of counsel. *Abernathy*, 748 F.3d at 817 (citation omitted).

8

Here, although the witness examination was not framed in terms of "trial strategy," the record supports the motion court's finding that the decision not to further cross-examine Putnam regarding the yellow markers was in fact trial strategy and was not ineffective. The record makes plain that defense counsel reasonably did not believe it mattered whether Petitioner had crossed the yellow markers, and that no further cross-examination of Putnam was likely to put Petitioner further inside the store. As such, the state courts' adjudication of this claim was not unreasonable in light of the evidence at trial and the postconviction hearing. Petitioner offers no evidence that a thorough cross-examination of Putnam regarding Petitioner's position when Putnam stepped in front of him would have elicited any information beyond that elicited on direct examination, as the state appellate court observed.

Furthermore, Petitioner has not shown that such information would have been sufficient to overcome the evidence of Petitioner's intent to steal the power washer. This evidence included his suspicious behavior before making for the exit of the store, and his showing a clearly unrelated receipt to Putnam upon being stopped. Thus, Petitioner has failed to show a reasonable probability that had counsel cross- examined Putnam extensively about where in relation to the yellow markers/line Petitioner was standing when he was stopped with the unpaid-for power washer, the result of the trial would have been different. *See Reed v. Norman*, No. 4:11CV1206 JCH, 2014 WL 1413536, at *2 (E.D. Mo. Apr. 11, 2014) (rejecting habeas petitioner's claim that counsel was ineffective in failing to cross examine a witness more thoroughly, where the petitioner failed to show

9

a reasonable probability that had counsel done so, the result of the trial would have been different).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of James Randell for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2015.